\*THE PLATT BROTHERS AND COMPANY *vs.* THE CITY OF WATERBURY.

Third Judicial District, Bridgeport, Oct. Term, 1899.   ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The action of a municipal board within the scope of its authority is in
legal effect the action of the municipality.

A defendant who, under a general denial, has had the full benefit of all
the evidence he could have introduced under several special defenses,
is not injured by a ruling of the trial court sustaining a demurrer
to such defenses.

Whether the use of a stream by one riparian proprietor is reasonable or
not, in view of the rights of other proprietors, depends largely upon
the circumstances of each case and is essentially a question of fact.

The mere grant to a city of legislative authority to build sewers for the
convenience and benefit of its citizens in carrying off their refuse
matter and discharging it into a neighboring stream, does not neces-
sarily make such use of the sewers a governmental act to the extent
of exempting the city from all liability to lower riparian proprietors
who are injured by such sewage.

The discharge of the accumulated filth and sewage of a city into a
stream in such quantities that it is necessarily carried to the prem-
ises of a lower proprietor where it causes a nuisance dangerous to
his health and destructive of the value of his property, may be
justifiable upon the ground of public necessity, but only upon pay-
ment of compensation for the property thus taken.

The right to maintain such a nuisance cannot be acquired by prescrip-
tion.

The plaintiff owned property in the defendant city which, pursuant of
its ordinances, now drained into its sewers and thus into the stream.
*Held* that this did not show such contribution upon his part to the
injury as to deprive him of equitable relief.

It appeared that the legislature had taken some steps towards the adop-
tion of a plan for the sewerage of the whole Naugatuck valley.
*Held* that the rights of the plaintiff were not contingent upon the
future action of the legislature, and were properly protected by the
injunction issued by the trial court.

The granting or refusal of an injunction rests in the sound discretion
of the court.

\* Owing to the late date on which the briefs were filed with the Re-
porter, this case appears with the bound volume of records and briefs
of the January Term, 1900, Third District.

Platt Bros. & Co. v. Waterbury.

The plaintiff testified that his foreman refused to take charge of the
    premises, because of the stench arising from the stream.  *Held* that
    this testimony was admissible, not to prove the fact of the stench,
    but the ground of the foreman's refusal.
A witness testified that he had refused to work on the plaintiffs' prem-
    ises for a similar reason.  *Held* that the fact that this refusal was
    after the suit had been brought, went only to the weight of the
    evidence.
The vote of a municipality not to accept a certain Act, is irrelevant to
    prove the construction of another Act.
The defendant's charter examined, and *held* to authorize payment by
    the city for private property taken for the purpose of maintaining
    and using the sewers.
    Submitted on briefs Nov. 24th, 1899—decided Jan. 4th, 1900.

SUIT to restrain the defendant from polluting with its
sewage the Naugatuck river above the plaintiff's mill-privilege,
and also for damages, brought to the Superior Court of New
Haven County where a demurrer to certain defenses of the
answer was sustained (*George W. Wheeler, J.*) and the cause
was afterwards tried to the court, *Shumway, J. ;* facts found
and judgment rendered for the plaintiff for $500 damages and
also for an injunction, and appeal by the defendant for alleged
errors in the rulings and findings of the court.  *No error.*

The amended complaint alleges that the plaintiff is the
owner of land and a water-privilege on the Naugatuck river,
two miles south of Waterbury, with manufacturing establish-
ments, dwelling-houses and other buildings thereon, and that
the water is conducted in a canal to the manufacturing es-
tablishments for the purpose of supplying power; that the
plaintiff is entitled to the natural flow of said river in a pure
condition; that from about July 12th, 1884, to the present
time, the defendant has discharged into the waters of said
river, above the property of the plaintiff, large quantities
of sewage and other noxious substances, which contam-
inated the waters in the river and rendered the same noxious
and filthy, producing noxious and unhealthy gases permeat-
ing the plaintiff's said buildings; that by said action of the
defendant the plaintiff has been deprived of all use of the
water in said river except for the purpose of furnishing power,
and its manufacturing establishments have been injuriously

affected by reason of said noxious and unhealthy gases, and the value of its said land, buildings and water-privilege has been largely diminished; that the plaintiff has duly notified the defendant and requested it to desist from such defilement of the river, but the defendant has notwithstanding continued the nuisance to the present time; that the plaintiff has already been damaged to the extent of $25,000, and the continuance of said nuisance will still more injure and damage its property. The plaintiff claimed $25,000 damages, and an injunction against the continuance of said nuisance.

The answer of the defendant admits the plaintiff's ownership of the property as alleged, and denies all other allegations.

It contained also a special defense setting up certain statutes and action in pursuance of the same, and alleging that the action complained of is the action of the board of sewer commissioners of the city of Waterbury, and not of the defendant. The plaintiff demurred to this special defense. The court (*George W. Wheeler, J.*) sustained the demurrer, because the statutes referred to showed that the board of sewer commissioners was created to act for the city, and had no power except to act for the city, and because the statement of the defense was too inadequate and indefinite to present any other claims. The defendant, by leave of court, then filed three special defenses, setting up substantially the claims appearing below in the statement of the defendant's claims in the finding of the court. Upon demurrer the court (*George W. Wheeler, J.*) held the defenses insufficient, on the ground that the facts which could not be proved under the denials of the answer did not constitute a defense.

The case was then tried on the issues formed by the denials of the plaintiff's allegations, and judgment rendered that the plaintiff recover $500 damages; and that the defendant be enjoined against discharging the sewage from its sewers into the Naugatuck river above the premises of the plaintiff, whereby such sewage should be carried down the river to said premises during the months of June, July, August,

September and October in each year, from and after the first day of December, 1902.

The defendant asked that this injunction be modified so as not to prejudice its rights under possible future legislation in respect to a State sewerage commission; and also to include a provision that the injunction should become inoperative whenever the defendant might acquire the plaintiff's property by condemnation. The modification was denied as unnecessary.

The court, *Shumway, J.*, made the following finding: —

" 1. At the time of the institution of the suit, and for many years before, the plaintiff, as admitted in the answer to the first paragraph of the complaint, was the owner of the tract of land situated in the town of Waterbury, about two miles southerly from the city of Waterbury, with manufacturing establishments, dwelling-houses, and other buildings thereon, through which said land flowed the Naugatuck river. On the said lands of the plaintiff there was a valuable water-privilege, from which water was conducted in an artificial canal to the several manufacturing establishments of the plaintiff for the purpose of supplying water therein. 2. Under an amendment to the charter of the city of Waterbury (9 Special Laws, pp. 233–237), and in accordance with the provisions thereof, the city of Waterbury by the board of sewer commissioners began the construction of sewers in said city in 1883, according to a sewerage system by which the contents of the sewers were all discharged into the Naugatuck river at points about two miles above the manufacturing establishments of the plaintiff. 3. The place where said manufacturing establishments were carried on always has been and is now known as 'Platt's mills.' At that place there has been a mill site for about a hundred years at least, the dam across the Naugatuck river being at the same place and substantially of the same height as it was in 1811. It was raised one foot about twenty-five years ago. From a pond made by the dam the water has always been taken out by means of an artificial canal, the property of the plaintiff, which carried it down to the said manufacturing establishments, a distance of

about half a mile. About $150,000 in all has been invested in the plaintiff's manufacturing establishments at Platt's mills. 4. Prior to the construction of said sewers in accordance with the said sewerage system by the city of Waterbury, the waters of the Naugatuck river at Platt's mills had contained no substances in sufficient quantity to be annoying to the plaintiff, or injurious to its business or property. 5. The defendant commenced to discharge into the Naugatuck river the sewage from said sewers about July, 1884, but it was several years before the plaintiff experienced any special difficulty therefrom. 6. No attempt had or ever has been made by the city of Waterbury to agree with the plaintiff as to any compensation to be paid it for any injury to any ' estate, property, right, privilege, or franchise ' which might be incurred by it by said use of the Naugatuck river for the discharge therein of the contents of said sewers, nor has any such compensation been made. 7. For a considerable period prior to the institution of this suit the plaintiff was very much and specially annoyed and injured, as hereafter stated, in the use and enjoyment of its property, by reason of the sewage discharged from said sewers into the Naugatuck river. It also appeared in evidence that there were other sources of pollution by which the water of the said river was also affected. 8. In the early part of the year 1891, and before this suit was brought, the plaintiff requested said city both through its board of sewer commissioners,—whose authority is described in said amendment to the charter of the city of Waterbury hereinbefore referred to,—and through its court of common council, to desist from continuing to discharge the contents of such sewers into the Naugatuck river; or if the city should persist in so doing, that the city should take steps, under said amendment, to assess damages and compensation to the plaintiff for any injury to its estate, property, right, privilege, or franchise which might or would be incurred by the use of Naugatuck river as an outlet for the discharge of said sewers. Said city of Waterbury neglected to comply with said request in either particular, and has taken no steps to prevent the pollution of the waters of Naugatuck river by

the sewage discharged into it from said sewers, or to assess such damages. 9. In 1854 the population of the city of Waterbury was about 10,000. It was agreed on the trial that its present population is about 42,500. Of late years the population has rapidly increased. 10. There are about thirty-two miles of highways in said city which it is the duty of said city to maintain in a condition safe and convenient for public travel. For this purpose these highways are drained into the sewers of said city by means of gutters and catch-basins, and thereby a quantity of filth from the streets finds its way into the Naugatuck river, and a further quantity of surface water flows over said highways into Great brook and Little brook, and this is carried into said Naugatuck river. 11. The contents of the discharges of said sewers have been and are the same as are continually discharged from city sewers containing organic matter capable of decomposition and putrefaction, and if not further diluted or purified will putrefy. 12. The sewerage system of the city of Waterbury has continually been extended since 1884, and is now being extended as the growth and wants of the city require. The number of sewer connections in January, 1885, was 359; on the 1st of January, 1893, 1,748; on the 1st of January, 1898, 3,046; extending through about thirty-one miles of streets. These connections are with manufactories, some employing 2,000 operatives, stores, hotels, dwelling-houses, etc. 13. In consequence of the discharge of the contents of these sewers into the Naugatuck river, the waters of the river in the season of the year when the water was or is low were, for a considerable period prior to the commencement of this suit, have been, and are inadequate to properly dilute the sewage, so that the pollution of the waters of the river from such sewage from said city of Waterbury had, before the bringing of this suit, passed and ever since has passed the limits of safe tolerance. 14. The accepted rule of safe tolerance is one part of sewage to twenty parts of pure river water. It is found that during the months of July, August, September and October of the years 1894, 1895, 1896 and 1897, the average ratio of sewage in the waters of Naugatuck river a short distance below

Platt's mills to pure river water has been substantially one part of sewage to about eleven parts of pure river water; and during the months of August and September during said period the average ratio of sewage to pure river water in the waters of Naugatuck river at the same place below Platt's mills, has been on the basis of one part of sewage to about eight parts of river water. 15. The flow of water in the Naugatuck river in the dry season of the year varies greatly in different years. The rainfall at Waterbury for a period of years between 1887 and 1897, inclusive, is shown by a table kept by Nelson J. Welton, president of the board of water commissioners for the city of Waterbury for many years, and a civil engineer, which table was offered in evidence by the defendants. While the rainfall of a water-shed may not be the most reliable means of ascertaining the volume of water in a river receiving the rainfall of such watershed, yet the varying amounts of the rainfall in different seasons do represent with approximate accuracy the comparative flow of the river, measuring one season with another, and the table of Mr. Welton shows how the flow of water in the Naugatuck river has varied between 1887 and 1897. 16. For a considerable period of time before the commencement of this suit, and to an increasing amount ever since, the sewage from said sewers of the city of Waterbury has been carried down the Naugatuck river, has settled in the waters of the pond made by the plaintiff's dam, and in the said canal leading from the dam to the manufacturing establishments, and in the warm seasons of the year it has putrefied, causing large and numerous patches of foul and offensive stuff to come to the surface of the pond and canal, giving forth offensive odors, and fouling the water to such an extent that the hands of the plaintiff's operatives, after being in the water for any purpose, would carry away an offensive smell. The deposits from such sewage during all said period both before and since the suit, at the bottom of the pond and in the canal, have been deep, and have been a great annoyance to the plaintiff in repairing its dam, in clearing out its canal, especially at its head, and in repairing the wheel-pit. The odors from this

putrefying sewage in the warm and low water seasons of the year, both before and since the institution of the suit, have been so strong and offensive as to compel the shutting of the windows of the plaintiff's manufactories, and to make some of the plaintiff's operatives sick with nausea and consequent vomiting, and all uncomfortable; and said odors are likely to cause serious and protracted sickness. Some of the plaintiff's operatives have been unwilling to work at Platt's mills because of the conditions just described, and by reason of said conditions plaintiff has not been able to improve a very large portion of its water-power at Platt's mills, or to improve a large portion of a manufacturing building erected there since the suit to take the place of one damaged by fire. 17. In the conduct of the plaintiff's business at Platt's mills a large quantity of pure water for dipping and cleansing its manufactured product is essential. Prior to the introduction of the sewerage system of the city of Waterbury, the plaintiff had been able to use the waters of the Naugatuck river for that purpose. Since said date, both before and after the institution of the suit, the waters of the river have become so foul that they cannot be used for the purpose, and the plaintiff is compelled to take this part of its manufactured product to a branch of its works in the city of Waterbury for the purpose of dipping and cleansing, and return the same to Platt's mills for finishing. 18. The plaintiff has used two different devices for carrying off the accumulation upon the surface of the water. A log or beam was placed at the entrance of the canal so inclined as to throw the floating substances away from the canal towards the dam. It also constructed in the canal near the raceway a box sunk in the water, with an outlet in the bottom. When the canal was full of water it would flow over the sides of the box, and carry into the box the floating material, and this was conducted in an underground drain into the river. It did not appear from the evidence that any other means could reasonably be adopted and preserve the full efficiency of the water-power. 19. The noxious and offensive odors created by said sewage in the manner above stated, and the pollution of the

waters of the river by said sewage, are likely to increase with the growth and development of business and population in the city of Waterbury, and unless such conditions are restrained and prevented the value of the plaintiff's said premises at Platt's mills will be diminished, if not substantially destroyed. 20. In the year 1868, and from time to time down to the year 1895, by authority of its charter and amendments thereto, the city of Waterbury procured water supplies from certain streams which are tributaries of the Naugatuck river. Some of these streams flow into the Naugatuck river within the limits of the city, and some without. Two other streams known as Great brook and Little brook flow through and near the center of the city into said river. 21. This water supply has been used by the inhabitants of said city in their residences, stores, offices, factories, hotels, restaurants, and for public buildings, and for flushing gutters and watering streets, and for all the various purposes for which city water is ordinarily used, and after so being used has been discharged mostly into the said sewers, and to a limited extent into the natural streams within the city, and thus has found its way into Naugatuck river. The quantity of water so used is about four million gallons per day. 22. The sewers were constructed under the advice of a skillful and competent sanitary engineer, and of skillful and competent civil engineers. The sanitary engineer was Rudolph Herring. He advised the city of Waterbury, in writing, through its board of sewer commissioners and through the court of common council, when the sewerage system of said city was first established in 1883, that the time would come when the waters of the Naugatuck river would no longer be able to properly dilute the sewage from the sewers, and that when such time should arrive it would be necessary for the city of Waterbury to take steps to remove the sewage out of the river, or to take some other proper measure by which the waters of the river would not be polluted beyond the point of safe tolerance. 23. The plaintiff, so far as appears, took no part, one way or the other, concerning the institution of the sewage system of the city of Waterbury. The officers and directors of the plaintiff com-

pany are residents of Waterbury. For more than twenty years it has also owned and occupied a factory located on Great brook, in the city of Waterbury, in which it now employs from 150 to 200 hands. Before the introduction of said sewerage system the refuse from such factory, including the water from water-closets and urinals therein, went into Great brook, directly or indirectly, and thence into the Naugatuck river. Within a year or two after said introduction of said sewerage system, and as soon as the sewer was built in the street on which was the city factory, the plaintiff, in compliance with the ordinances of the city, connected its city manufactory with the sewer, and thereafter no foul water of any kind left said factory except through said sewer. 24. Upon trial of the case the following question of evidence arose. Lewis A. Platt, the manager of the plaintiff, testified that after the burning of a rolling-mill at Platt's mills the plaintiff was obliged to have a rolling-mill at once, and there was no place on the property in the city to put it; and he proceeded as follows: 'And afterwards we put up a building about 150 feet long by fifty feet wide, with the intention of moving various departments from the city mills to Platt's mills. We did move one department there at first with some difficulty— Q. What do you mean by some difficulty? A. Well, I mean there was some objection on the part of the people who had charge of it, the foreman— Q. That is, he worked in that department here in the city? A. Yes. Q. You say some objection; what objection— Objected to as being hearsay statements. THE COURT. What he said you don't care for. Q. There was some objection on their part; I want to know what the objection consisted of; not what they said; whether it was because of the going out of the city, or what the objection was, or whether it was attributable to this nuisance, that is all. MR. HARRISON. What the gentleman seeks is apparently to avoid the rule against hearsay; then he cannot tell what the party said, but he is going to ask him to tell your Honor the substance of what they said. There isn't any difference in the principle. MR. ALLING. Sometimes the very hearsay is admissible; the objection a person gives to doing

Platt Bros. & Co. v. Waterbury.

a certain thing is that he said so and so. If he said so, it doesn't prove that the thing exists, but it shows the objection. It isn't hearsay in the objectionable sense; it is the very thing we want: what reason did he assign, if any, for not going? It isn't offered to prove that there was a stench down there, but it is offered to prove that the foreman wouldn't take charge because of the stench, and that he set up that as a reason. This evidence is in no sense evidence as to condition of the stench; it is evidence as to the reason, the difficulties that he assigned, and the reasons which other people assigned for not going to work; the difficulty of establishing a branch of industry where the stench is so severe that the men refuse to go there. MR. HARRISON. If it was a controversy between this company and the men themselves over some issue or other, and this was a material fact, then what the men said would be admissible, because they would be parties. These men are not parties to these proceedings. This evidence is introduced for the purpose of asking your Honor to find damages for them in a large amount, and your Honor is asked to find and hear what some men said about the stench there as a reason— MR. TERRY. No, no. MR. HARRISON. The substance of what they said, the objection they made to going there, is necessarily the substance of what they said on the subject. The proper way to prove that is to call the men themselves, and see what they have to say about it, not what they said to this employer; *non constat* but what they said something else. Perhaps they were trying to push up their wages. MR. O'NEILL. There is another objection. This objection on the part of the man going down there was all after this controversy arose. These new mills were set up here within the last two or three years, and it would be very easy for a person to make out a case; for a person to make evidence for himself. MR. ALLING. All that is simply to the weight of the testimony. If he can't get workmen to go there on account of the stench, he can't carry on his work, and that depreciates the value of his property. THE COURT. I am inclined to think you are entitled to that fact, if it is a fact, that you can't get workmen to go there on account of the stench.

Mr. O'Neill. It doesn't give us any opportunity to cross-examine the man who made the statement. The Court. I think I will allow the witness to answer the question. Mr. Harrison. I think this fact ought to appear in the record, as to the time when this took place, so that it may appear whether it was after this suit was brought. Mr. Terry. Yes, it was after this suit was brought; but that doesn't affect the question whether it has injured our property and prevented us from developing, whether it has occurred before or after. Exception by the defense. 'Q. You say some objection; what objection? A. The foreman was afraid his health would be injured, and he anticipated difficulty in keeping his workmen together. Q. Well, for what reason? A. On account of the sewage in the river. Q. Whether or not in fact you have been prevented by that cause from increasing your plant down there, from filling up the unoccupied portion which you testified to yesterday of this new factory which you have built? A. Yes. I have attempted to move three departments to that building, and I have met with the same objection. Q. So, if I understand you correctly, substantially half of this new building remains unused at the present time? A. Just about half.' Afterwards the plaintiff introduced sundry operatives in its city factory, who testified that they objected to go down to Platt's mills to work on account of the offensive nuisance there. 25. Franklin G. Newbert was called as a witness by the plaintiff, and testified he was in the employ of the Platt Bros. Company, and had charge of the short eyelet department. The following question was asked on the direct examination: ' Q. Whether or not Mr. Platt has been to you with reference to moving your department or works down to Platt's mills? A. Yes, he did. Q. Whether you made any objection to going down to Mr. Platt? A. I did object. Q. For what reason? A. Because of the smell down there in regard to my health.' It appeared that this was since the bringing of this action, and that the witness had not left the Waterbury factory. The defendant objected to this evidence, because it appeared that the witness had not made any objection to going to Platt's

mills until after this action was brought. To the ruling of the court admitting the question the defendant excepted. 26. In March, 1877, the General Assembly passed an Act concerning the city of Waterbury (8 Special Laws, pp. 121– 127). By § 11 of said Act it was to take effect when accepted by said city at a special meeting to be duly warned and held for that purpose. The defendant offered to show that at a special meeting of the citizens of Waterbury held in pursuance of said Act the city voted not to accept the Act. The court excluded the evidence, and the defendant duly excepted. 27. On the trial of the case the defendant offered to show from the records of the board of sewer commissioners of the city of Waterbury the warning of the first meeting of the board of sewer commissioners, for the purpose of organization, signed by the mayor of the city, April 17th, 1882, for the purpose of showing that the board was organized under the Act of 1881, and proceeded to employ engineers, to adopt a plan, and to construct these sewers, acting independently, under authority of the Act of 1881. Upon this offer the court said: 'Is it for the purpose of showing that they were compelled to build the sewer? MR. BURPEE. Yes. THE COURT. It is ruled out. MR. BURPEE. There are a number of other records for that same purpose. I think this is sufficient for that point.' The defendant duly excepted to said ruling. 28. The court found the damages to the plaintiff, to the commencement of the suit, to be $500, and rendered judgment for that amount and costs, together with an order and injunction. 29. On the trial of the case the plaintiff claimed that the defendant was bound to take its sewage out of the river so as to prevent its becoming a nuisance to the plaintiff's property, or to assess and pay the plaintiff its damages under the said Act of 1881. 30. The defendant offered testimony from which I find that the expense to the city of Waterbury in removing said sewage from the Naugatuck river, or of preventing the unreasonable pollution of its waters by reason of such sewage, will be very great, and that such work will take considerable time, and asked that if an order of injunction was issued that it be so drawn as

not to take effect immediately, nor within a period of three years from date. It is found that a reasonable period for the defendant to remove said sewage from the river, or to otherwise prevent the waters of the river from being unreasonably polluted, would be the 1st of December, 1902. 31. The defendant now further objecting that the injunction order should not be so drawn as to prevent the use of the waters of said Naugatuck river for said sewage during the seasons of the year when the flow of the river is full and sufficient for the safe dilution of the said sewage, it is found upon the evidence that such use of said river at the present time is safe and not injurious to the plaintiff during the months of the year except June, July, August, September and October, and for those months it is unsafe and injurious to the plaintiff, as heretofore stated and described. 32. The plaintiff's attorney, to prove the allegations of the fifth paragraph of the complaint, offered to show that he had at one time given verbal notice to the sewer commissioners of the city of Waterbury that they should cease to pollute the waters of the Naugatuck river. The defendant objected, on the ground that nothing in the charter of the defendant city authorized the board of sewer commissioners to stop sewering into the Naugatuck river, or to do anything else with the sewage except to empty it into such river, and they were not the agents of the city to receive protests or notices or for any other purpose except to manage the sewer system of the city in the manner prescribed by the charter of the city. The court admitted the evidence, and the defendant duly excepted to the ruling. 33. The defendant claimed: (a) That the construction of said sewers was a public governmental work. (b) That the use of said sewers was a public governmental use. (c) That the use of said sewers as above described was a reasonable use thereof. (d) That the defendant had the legal right to use its water supply for the purposes and in the manner above described. (e) That the use of said water supply in the manner and for the purposes above described was a reasonable use thereof. (f) That inasmuch as the plaintiff itself had for a long time and was still contributing to the pollution of the Naugatuck river

in the same manner as other inhabitants of the city, it was not
entitled to either damages or relief by injunction.   (g) That
the plaintiff by obstructing the free flow of the water in the
Naugatuck river by its dam, as above described, caused or con-
tributed to its own injuries, and that it was not therefore
entitled to any damages, or to injunctive relief.   (h) That
the injuries complained of and found to exist were and are
not direct, but consequential merely.   (i) That the charter
of the defendant and its amendments do not provide for com-
pensation for merely consequential injuries resulting from
the construction or use of said sewers.   (j) That the injuries
to the plaintiffs are not so great as to require the expenditure
by the defendant of $1,000,000 or more for relief from plain-
tiff's present injuries.   (k) That the plaintiff is not entitled
to damages and to injunctive relief also.   (l) That the de-
fendant is not liable for consequential injuries resulting from
the construction of its sewers, or the reasonable use thereof.
(m) That the construction and maintenance of said sewers
by the defendant was authorized by express legislative au-
thority, and that therefore the plaintiff was not entitled to
injunctive relief.   (n) That if the plaintiff was entitled to in-
junctive relief it is entitled to have the defendant restrained
only until the plaintiff's damages have been ascertained and
paid.   (o) That inasmuch as no evidence has shown that the
water in the Naugatuck river was contaminated to a noxious
or offensive degree at any time except during the months of
July, August and September in each year, the defendant
ought not to be enjoined from the use of the river except
during those months.   The attention of the court was not
called to the claim (o) until judgment had been rendered in
the cause."

The appeal assigns for error the action of the court (1) in re-
spect to certain preliminary motions and the demurrers ; (2) in
the rulings on the admission of testimony, as stated in the
finding; (3) in overruling the defendant's claims set forth
in paragraph 33 of the finding; (4) in finding the fact
stated in paragraph 16 of the finding, that sewage from
said sewers had settled in the waters of the pond made by

the plaintiff's dam and the canal leading therefrom, because there was no allegation in the complaint to that effect and no such issue of fact was raised by the pleadings.

*Lynde Harrison, John O'Neill, Lucien F. Burpee* and *John P. Kellogg*, for the appellant (defendant).

*John W. Alling* and *George E. Terry*, for the appellee (plaintiff).

HAMERSLEY, J. There is no error in the disposition of the preliminary motions.

The demurrer to the special defense was properly sustained. Under the charter of the city of Waterbury the board of sewer commissioners is established to execute certain powers vested in the city, and the municipal corporation is responsible for the acts of the commissioners within the scope of their authority. The action complained of in the complaint was the action of the city. *West Hartford* v. *Board of Water Com'rs*, 44 Conn. 360, 369.

Sustaining the demurrer to the three special defenses subsequently filed is not ground for a new trial. These defenses contained certain allegations of facts that may be admissible under the issues formed by the denials of the several paragraphs of the complaint; possibly some of these allegations might have been retained in the answer as explaining the nature of the denials, but if so, the defendant has not been injured. It has gone to trial on the denial of the facts stated in the complaint, and it has had the benefit of all evidence that it could have introduced under the special defenses. All claims of law arising on these defenses are also fully presented in the record by the action of the court in overruling the claims of the defendant as to the legal effect of the facts found, and will be considered in disposing of those claims.

The court did not err in overruling the defendant's claims set forth in paragraph 33 of the finding. To understand the precise nature of the questions of law involved, it is convenient to briefly restate the material facts. The plaintiff

owned an ancient water-privilege on the Naugatuck river below the defendant city, and also the land on the river and large manufacturing establishments run by the water-power; the river drains a section somewhat thickly populated and largely used for manufacturing; by this use of the river, reaching back to the early settlement of the Naugatuck valley, its water prior to 1884 had become polluted to a considerable extent, rendering it unfit for primary uses; about 1884 the defendant constructed, under authority from the legislature, certain main and lateral sewers, by means of which filthy and noxious substances accumulated by inhabitants of the city were collected and discharged into the river in such quantities that the water was inadequate to dilute such sewage, and the same was carried to the premises of the plaintiff, producing the injuries complained of; before the construction of the sewers the pollution of the river was not of such a nature as to produce such injuries.

The defendant claims that its use of the river is a reasonable use, and is justified by the fact that the water of the river has been, for an indefinite period, given up to secondary uses. This claim is substantially disposed of by the court as a question of fact.   Whether or not the use of a river by a riparian proprietor is a reasonable use in view of the rights of other riparian proprietors, depends largely on the circumstances of each case, and is essentially a question of fact.   *Keeney & Wood Mfg. Co.* v. *Union Mfg. Co.*, 39 Conn. 576, 581.   The inference of the trial court from the special facts found, that the city's use of the river is an unreasonable one, is the only inference that can legally be drawn from those facts.   The use of a stream for drainage may under some circumstances be reasonable, although the water is thereby rendered unfit for its primary use; but the concentration of the filth accumulated by one proprietor, whether an individual or a municipal corporation, and its discharge into the river in such quantities that it is necessarily carried to the premises of another where it produces a nuisance dangerous to his health and destructive of the value of his property, must be unreasonable.   *Morgan* v. *Danbury*, 67 Conn. 484, 493.   If the

defendant has, as claimed, a prescriptive right to pollute the river in the manner used prior to 1884, that right does not justify it in further polluting the river by an additional and different use; and the defendant cannot acquire by any prescription a right to maintain a nuisance like that described in the finding. *Nolan* v. *New Britain*, 69 Conn. 668, 683. Its defense therefore must rest wholly on legislative authority.

The main contention of the defendant may be stated in this way: The use of the sewers, under authority of the legislature, in the manner described, is a public governmental use; the injuries to the plaintiffs result from this governmental use, and are not direct but merely consequential; the victim of consequential injuries resulting from a governmental use is entitled to no remedy unless one is given by statute; the defendant's charter provides no remedy for consequential injuries resulting from the use of said sewers; *ergo* the plaintiff has no remedy and its damage is *damnum absque injuria.*

The premises essential to this conclusion are untrue. A governmental use may include any act which the State may lawfully perform or authorize. There are, however, governmental acts to which certain immunities attach; and it is with this restricted meaning that the phrase is used by the defendant. In this sense a governmental act is one done in pursuance of some duty imposed by the State on a person, individual or corporate, which duty is one pertaining to the administration of government, and is imposed as an absolute obligation on a person who receives no profit or advantage peculiar to himself from its execution. It is the State, exercising its governmental power through an agent, who in this matter is the agent of the State and nothing more. It is to be distinguished from a large class of governmental acts which the State, by way of grant or special privilege, authorizes persons to perform in part for their personal benefit. The principal immunities belonging to a governmental act, in this restricted sense, are: 1. Freedom from personal responsibility for the consequences of the act done. So long as a lawful

mandate of the State is faithfully executed, the agent acting within the scope of that authority enjoys the exemption from suit which belongs to the State. 2. Freedom from personal responsibility for the negligence of his servants. The rule of *respondeat superior* does not apply, because the agent of the State is not the superior; the real superior is the State itself.

The defendant claims these immunities. It may be doubted whether the use of sewers under the charter of the defendant, for the collection and disposition of refuse belonging to its citizens, is a governmental act within the definition given. The charter authorized the construction of sewers for that purpose, but no absolute duty was imposed upon the city; action in pursuance of the authority was at its option and could not have been enforced by any process of law without further legislation. While sewers or drains for the disposition of surface waters collecting in highways may be considered as mere adjuncts of a highway, partaking of its nature as a governmental use (*Cone* v. *Hartford*, 28 Conn. 363, 372), it is different with sewers for the disposition of refuse and filth accumulated on private property. The disposition of such stuff is in part for the benefit of the property-holder. The city represents in such respects the interests of its inhabitants, and is granted certain special powers, in part for the promotion of their interests. *Bronson* v. *Wallingford*, 54 Conn. 513, 519. It is well settled that there is a clear distinction between those governmental duties imposed upon a city as a mere agent of government, and those governmental powers granted as a privilege primarily for the personal benefit of its inhabitants. But the tests for the demarcation of the two classes of power are not so well settled. When the terms of the statute are clear they furnish the most reliable test; and some weight perhaps may be given to the nature of the power as commonly regarded (*Jewett* v. *New Haven*, 38 Conn. 368, 377, 379, 387, 389, *Jones* v. *New Haven*, 34 id. 1, 11, 13, 14), care being taken not to clothe an individual with the immunity of the State beyond the necessity of his agency. The distinction must always be, in some cases, a difficult one to draw. We think it evident that the mere

granting authority to a city to construct for the convenience and benefit of its inhabitants sewers adapted to carry off their refuse matter to some neighboring stream, does not necessarily make such use of the sewers a governmental use in the sense indicated. On the other hand, it is also evident that the legislature may impose the duty of constructing sewers in such manner as to make the performance of that duty strictly a governmental act.

But if, for the purpose of this case, we concede the defendant's claim that the use is a governmental use, it is nevertheless liable to the plaintiff. The injury described by the complaint is not a mere consequential damage, like that resulting wholly from the lawful use of one's own property, or the lawful exercise of governmental power; it is a direct appropriation of well recognized property rights within the guaranty of the Constitution,— " The property of no person shall be taken for public use without just compensation therefor "—(*Nolan* v. *New Britain, supra,* p. 681), and so the defendant's claim that its charter does not authorize the condemnation of the plaintiff's property rights, is immaterial. Upon a careful examination of the charter as enacted in 1871 (7 Special Acts, 206), and amended in 1881(9 id. 233 *et seq.*, 237), in 1883 (9 id. 839), and in 1884 (9 id. 954), and applying the rule which requires a law to be so construed, if reasonably possible, as to give it validity, we think the city is authorized to make compensation by agreement or after appraisal, for any private property taken for the purpose of the maintenance and use of the sewers authorized. But if it were otherwise, the defendant would not be benefited. Its whole defense of acting under lawful State authority would then fail, and the mere finding of the facts alleged in the complaint would clearly support the judgment.

The defendant's brief presents its claim in a form somewhat different from that stated in the finding, and certainly novel in this State. It is substantially this : 1. A riparian city has a right to use the river for surface drainage, and such surface drainage necessarily pollutes the water to some extent, increasing with the growth of the city. 2. The use of these legiti-

mate drains to carry off the noxious refuse accumulated by its inhabitants, becomes in time an absolute necessity. 3. The right of surface drainage is thereby enlarged so as to include the right to discharge into the river, by means of these drains, such noxious refuse. Therefore the necessities of municipal growth give to the city a right to convey these noxious substances to the property of down-stream proprietors, and so to appropriate that property for public use without compensation.

It is unnecessary now to discuss the limitations to the right of surface drainage, for the second and third propositions are clearly wrong. The right to pour into the river surface drainage does not include the right to mix with that drainage noxious substances in such quantities that the river cannot dilute them nor safely carry them off without injury to the property of others. The latter act is, in effect, an appropriation of the bed of the river as an open sewer, and the proposition that it may become lawful by reason of necessity is inconsistent with undoubted axioms of jurisprudence. The appropriation of the river to carry such substances to the property of another, is an invasion of his right of property. When done for a private purpose it is an unjustifiable wrong. When done for a public purpose it may become justifiable, but only upon payment of compensation for the property thus taken. Public necessity may justify the taking, but cannot justify the taking without compensation. It may be necessary for a city to thus mix with its drainage such substances, but it is not necessary to pour such mixture into the river, without purification; indeed the purification is coming to be recognized as a necessity. But however great the necessity may be, it can have no effect on the right to compensation for property taken. The mandate of the Constitution is intended to express a universally accepted principle of justice, and should receive a construction in accordance with that principle, broad enough to enable the court to protect every person in the rights of property thus secured by fundamental law.

There are certain apparent, but not real, exceptions to this

protection. Emergencies may be such as to justify the taking of property without waiting to provide for compensation; property may be destroyed without compensation in certain cases when used unlawfully, or when it has become a thing of danger. But this is not a case of war or conflagration. The plaintiff has not so used its property as to subject it to the harsh police power of confiscation. The plaintiff has certain rights as a riparian landowner. These rights are property within the meaning of our constitutional guaranty, and an invasion of these rights such as the defendant has made is a taking of that property. The legislature has no power to authorize such taking except for public use, and then only upon providing for just compensation. *Kellogg* v. *New Britain*, 62 Conn. 232, 239; *Wadsworth* v. *Tillotson*, 15 id. 366, 373; *Harding* v. *Stamford Water Co.*, 41 id. 87, 93; *Nolan* v. *New Britain*, 69 id. 668, 681; *Fisk* v. *Hartford*, 70 Conn. 720, 731; *Seifert* v. *Brooklyn*, 101 N. Y. 136; *Chapman* v. *Rochester*, 110 id. 273, 277.

In England the protection of property from appropriation for public use without compensation does not depend on any fundamental law, but upon inherent justice; and the principle is carefully recognized in all legislation authorizing an infringement of private rights. So the legislative authority for emptying the sewage of cities into watercourses and rivers, is coupled with the provision that no nuisance is thereby authorized. Such legislation protects private rights in a manner similar to our constitutional legislation. The city of Leeds having obtained an Act of Parliament for emptying its sewage into the river Aire, claimed that the usual protection was not included in the Act, and therefore the city was not responsible for nuisances maintained under an Act of Parliament, urging the same plea of necessity pressed in this case. James, V. C., held that the Act would not bear the construction claimed, and said he would be bound to put any construction on the Act " which would prevent such a monstrous injustice." This decision was affirmed by the appellate court, Gifford, L. J., saying: " In construing the Act, one must always consider that, if it had a different mean-

ing, it would be against common sense." *Attorney-General* v. *Leeds Corporation,* L. R. 5 Ch. App. 583, 588, 596.

The theory of the defendant that the necessities of a city may not only justify the taking of riparian rights but the taking without compensation, seems to find support in some Indiana cases. *Richmond* v. *Test,* 18 Ind. App. 482; *Barnard* v. *Sherley,* 135 Ind. 547; *Valparaiso* v. *Hagen,* 153 id. 337. We do not find other cases that take this extreme ground. The right to compensation cannot be questioned in this State.

The defendant claims that the plaintiff is not entitled to equitable relief, because it contributed to its own injury: (1) by not arranging its dam and canal so as to effectually prevent the accumulation of noxious substances brought down by the river; (2) by using the sewers in the same manner as other inhabitants of the city. The court finds that devices were used by the plaintiff to mitigate the evil, and that " it did not appear from the evidence that any other means could reasonably be adopted and preserve the full efficiency of the water-power; " and also finds that the plaintiff owned property in Waterbury which prior to 1884 drained into the Naugutuck river, and that after that date, in compliance with the city ordinances, the plaintiff connected this property with the sewer. These facts fall far short of proving that the nuisance complained of was due in part to the fault of the plaintiff so that it does not come into court with clean hands.

It appears that some steps have been taken by the legislature looking towards the adoption of a plan of sewerage for the whole Naugatuck valley. The present rights of the plaintiff are not contingent on the future action of the legislature; and there is no public policy which forbids the issue of an injunction to protect its rights because of such possible legislative action.

It was plainly unnecessary to incorporate in the order of injunction a provision that it is made subject to the authority of future legislation, or that it should become inoperative if the defendant should hereafter acquire the plaintiff's premises by condemnation.

The claim is made that the court abused its discretion in granting an injunction under all the circumstances of the case. "The granting or refusal of an injunction rests . . . in the sound discretion of the court, exercised according to the recognized principles of equity." *Fisk* v. *Hartford, supra,* p. 732. We think the trial court has acted within the limits of this discretion. The plaintiff cannot initiate proceedings of condemnation, and it is difficult to see how it can obtain adequate remedy except by injunction. We fail to see how any great public mischief will be produced by compelling the city within the time limited, either to make compensation for the property taken or to provide proper means for the disposition of its sewage.

Under the Practice Act the plaintiff was entitled to claim damages for the injury already done, and an injunction against its continuance.

There is no error in the rulings upon evidence. The testimony of Mr. Platt (stated in paragraph 24 of the finding), that his foreman refused to take charge of the premises because of the stench, was not admissible to prove the fact of the stench, but was admissible to prove the fact that the foreman refused to act on that ground. It was offered for no other purpose. Moreover the fact of the stench was fully established by direct and proper testimony.

The testimony of Franklin G. Newbert (par. 25), that he had refused to work on the plaintiff's premises for a similar reason, was not inadmissible because the refusal was made after the action was brought, although that fact might affect its weight.

The court properly refused to admit the evidence referred to in paragraph 26. It was offered for the purpose of proving the construction of the Act of 1881, and for that purpose was an irrelevant fact. For similar reasons the evidence referred to in paragraph 27 was properly excluded.

The defendant was not injured by the admission of evidence of a verbal notice given to the sewer commissioners (par. 32), as notice to the city was duly proved.

The complaint charged that the noxious substances com-

mitted to the river by the defendant produced certain dele-
terious effects upon the premises of the plaintiff; and it was
competent for the plaintiff, certainly in the absence of all ob-
jection, to show that this effect was accomplished by the cur-
rent of the river depositing these substances in the plaintiff's
pond and canal leading to its manufacturing establishment,
and the court did not err in finding that fact.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.