Argued June 16, reversed July 7, 1914.

# SMITH *v.* SILVERTON.*

### (142 Pac. 609.)

**Municipal Corporations—Sewers—Right to Construct.**

1.  A city has no right, without legislative authority, to cast its sewage into a stream, so as to pollute it to the injury of lower riparian proprietors, unless it has first condemned the interests injuriously affected.

> [As to pollution of waters by a municipal corporation, see notes in 84 Am. St. Rep. 918, 924; Ann. Cas. 1912B, 450.]

**Eminent Domain—Appropriation of Stream—Sewage—Right of City.**

2.  Where the casting of sewage into a stream amounts to a public nuisance or a taking of private property in the constitutional sense, the city is not protected or justified in such appropriation, unless it has acquired the right by condemnation and payment of compensation.

**Municipal Corporations—Sewers—Right to Maintain.**

3.  The right granted to a city by its charter to construct sewers does not give implied authority to pollute a stream.

**Nuisance—Public Nuisance—Right to Enjoin.**

4.  The right of the state to enjoin a nuisance may be delegated to and exercised by a city or other power specially named for that purpose.

**Nuisance—Public Nuisance—Right to Enjoin.**

5.  Under Section 4693, L. O. L., providing that in cities, districts and places having no local board of health, or where the sanitary laws or regulations are inoperative, the state board of health may order nuisances to be abated and removed, and providing a criminal penalty for violation of such orders, the board of health may in a proper case have a nuisance enjoined, but only on satisfactory evidence that the act in question creates a public nuisance, or, if the danger is only apprehended, that it is real and imminent.

**Municipal Corporations—Sewers—Right to Maintain—Injunction.**

6.  In the absence of evidence as to the use of the water of a stream for domestic purposes or for stock or the probability of such use, the state board of health cannot enjoin a city from casting its sewage and drainage into the stream.

From Marion: WILLIAM GALLOWAY, Judge.

---

*On the right of a municipal corporation to drain sewage into waters, see notes in 48 L. R. A. 491 and 61 L. R. A. 694.

As to injunction against city's drainage into watercourse, see note in 23 L. R. A. 301.

For the power of board of health as to nuisances, see note in 36 L. R. A. 603.                                          REPORTER.

· Department 2.    Statement by MR. JUSTICE EAKIN.

This is a suit by Andrew C. Smith, C. J. Smith, E. A. Pierce, Alfred Kinney, W. B. Morse, E. B. Pickel and Calvin S. White, constituting the State Board of Health of the State of Oregon, against the City of Silverton, to enjoin said city from casting its sewage and drainage into Silver Creek. This stream flows through the said city, and during the month of August contains a flow of about 35 second-feet of water running therefrom through a thickly populated agricultural country. It is crossed below the city by various county roads, and is alleged by the plaintiffs to be used by residents along it and by their stock for drinking purposes. The city sewers empty into it on each bank, the flow of which amounts to .12 of a second-foot. After taking evidence, a decree was rendered enjoining the defendant from emptying the sewer into the creek. Defendant appeals.          REVERSED.

For appellant there was a brief over the names of *Mr. Grant Corby, Mr. Alfred Todd* and *Mr. M. J. Van Valkenburg,* with oral arguments by *Mr. Corby* and *Mr. Todd.*

For respondent there was a brief and an oral argument by *Mr. Ernest R. Ringo.*

MR. JUSTICE EAKIN delivered the opinion of the court.

One of the defenses to the suit is that the present sewer system is a great improvement upon the offensive surroundings and unsanitary conditions existing prior to the construction of the sewer; but that does not affect the questions involved. The issue is as to whether the present sewer system is a menace to the lives and health of the citizens in the vicinity of the

stream.   There is very little testimony upon this question, except as to the pollution of the water, and that is only opinions of witnesses and no proof of the extent to which the water is used or the effect of such use.

1.  First, we may consider when and how a city may use a natural stream of water as a place of discharge for its sewer system.  The rule as recognized by the courts is that a city has no right to cast its sewage into a stream so as to pollute it, to the injury of the lower riparian proprietors.  There are exceptions to this ruling dependent on circumstances, but not involved here.  It seems to be elementary that a city's right in that regard is dependent upon legislative authority, unless it has first condemned the interests injuriously affected, but it seems that by legislative authority it may with impunity sewer into navigable or tidal streams, if done in a proper manner, though it is doubtful if the legislature can authorize it to so use a stream, the bed and banks of which are in private ownership: See *Gray ex. rel. Simmons* v. *Patterson,* 60 N. J. Eq. 385 (45 Atl. 995, 83 Am. St. Rep. 642, 48 L. R. A. 717) ; *Valparaiso* v. *Hagen et al.,* 153 Ind. 337  (54 N. E. 1062, 74 Am. St. Rep. 305, 48 L. R. A. 707) ; *Smith* v. *Sedalia,* 152 Mo. 283  (53 S. W. 907, 48 L. R. A. 711).

2.  In this country, even if the legislative authority is conceded, still the question arises as to whether or not injuries are inflicted  which amount to a public nuisance or a taking of private property in the constitutional sense; and, if so, the municipality is not protected or justified in such appropriation unless it has acquired the right by condemnation and the payment of compensation.

3.  But the right or privilege granted to the council in the charter of Silverton to construct sewers is not implied authority to pollute the stream, as claimed

by the defendant. Such would not be a governmental use or a duty imposed, but only a privilege to construct sewers: See *Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531 (45 Atl. 154, 77 Am. St. Rep. 335, 48 L. R. A. 691), which is fully annotated. A distinction in such cases must be noted between the right of a city, even with legislative authority, to pollute a stream in case the title to the bed and banks of the stream is in the riparian owner, and where the state is the owner of the stream: *Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531 (45 Atl. 154, 77 Am. St. Rep. 335, 48 L. R. A., at page 704, and notes at pages 698, 702) ; *Hooker* v. *Rochester,* 37 Hun, 181; *Attwood* v. *Bangor,* 83 Me. 583 (22 Atl. 466) ; *Sayre* v. *Newark,* 60 N. J. Eq. 361 (45 Atl. 985 83 Am. St. Rep. 629, 48 L. R. A. 722) ; note to *Georgetown* v. *Commonwealth,* 61 L. R. A. 694, annotating the cases subsequent to the decision in the Platt Bros. case. Counsel for the defendant cites some authorities upon general statements of the law, but the citations are not opposed to the views above expressed, when applied to the facts: 10 Am. & Eng. Ency. Law (2 ed.), 240, 248, and cases cited, and 40 Cyc. 594, cited by defendant, are in harmony here. It is said in the note to *Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531 (45 Atl. 154, 77 Am. St. Rep. 335, 48 L. R. A. 691):

"Whatever may be the rule with respect to surface water, there seems to be no authoritative decisions asserting the right of municipal corporations, merely as riparian owners and without legislative authority, either express or implied, to drain sewage into waters to the injury of others, although there is an intimation to that effect in *Valparaiso* v. *Hagen.*"

Defendant cites and places much reliance on the case of *Valparaiso* v. *Hagen,* 153 Ind. 337 (54 N. E. 1062, 74 Am. St. Rep. 305, 48 L. R. A. 707), but this case stands almost alone on this question. Farnham on

Water and Water Rights, at page 632, says that it is
the only case that has refused to recognize the rule
that mere permission to construct a sewer system or
even to turn the sewer into a particular stream will
not authorize the commission of a nuisance, and he
discredits the case. He distinguishes *Merrifield* v.
*Worcester,* 110 Mass. 216 (14 Am. Rep. 592), and criti-
cises it at page 639. At page 625, where is a full
discussion of the subject, he says that at times, when
the flow of a stream is continuous and sufficient to dis-
solve and carry away the sewage, it may not affect the
usefulness of the water, but that at other times it may
do so, which renders it a nuisance and a menace to the
health of the public.

"It is almost impossible for a municipal corporation
of any size to turn its sewage into a water body for any
length of time without creating a nuisance, and the
question whether it has a right to make such disposal of
its sewage depends, therefore, upon its right to create a
nuisance, or the power of the legislature to authorize
it to do so. * * The right of a municipal corporation
to dispose of its sewage and garbage by turning it into
water bodies will be materially simplified by first de-
termining the necessity for doing so. * * But if it shall
appear that it is not only not necessary to dispose of
such material by casting it into the water, but that such
method of disposal is crude, unsanitary, and more
harmful than beneficial, and that it has been abandoned
throughout all of the more advanced centers of popu-
lation of the old world, there would be little to justify
a holding that there is power to make such disposal of
the waste products."

Then follow about two pages of description of the
septic tank and its effectiveness, after which he
continues:

" 'This is accomplished, too, with an entire absence
of injury, or even offense, to persons living in the

immediate vicinity of the works.' So long as this method of disposal is practical, there is no reason for permitting a municipality to create a nuisance with these waste products. * * Having seen that sewage may be rendered harmless, and that casting it into the watercourses in its natural condition is unnecessary, the solution of the question of the right of the municipality to do so becomes a simple one. The overwhelming weight of authority denies such right."

However, these cases and notes are largely discussing private injuries or their effect upon private property or individuals, while in this case the suit is brought by the state board of health to enjoin a public nuisance in the interests of public health. Here there is no complaint that private property has been taken, nor that the health of any individual or community has been affected. It is not alleged that such is the result, but that the lives and health of citizens are endangered thereby, and the proof is to that effect. Neither is it contended that the stream is rendered foul-smelling or otherwise offensive. But two questions are discussed or presented, namely, as to the authority of the state board to maintain this suit against a city in Marion County, and the right of the defendant to drain the city's sewage into Silver Creek. Defendant first insists that such a suit can be instituted only by the state in the name and by the authority of the district attorney.

4. The right of the state to enjoin a nuisance may be delegated to and exercised by a city or other power especially named by it for that purpose: *Bernard* **v.** *Willamette Box & Lumber Co.,* 64 Or. 226 (129 Pac. 1039).

5. The statute creating the state board of health (Section 4693, L. O. L.) provides:

"In cities, districts, and places having no local boards of health, or in case the sanitary laws or regulations in places where boards of health or health officers exist should be inoperative, the state board of health shall have power and authority to order nuisances * * to be abated and removed."

There is a criminal penalty attached to this section, but the section necessarily includes authority to have the nuisance abated. In a proper case this may be done by injunction: See 21 Cyc. 398; *Gould* v. *Rochester,* 105 N. Y. 46 (12 N. E. 275). It is said in Parker and Worthington, Public Health and Safety, page 102, that the health board may maintain actions in any court or restrain by injunction violations of and noncompliance with its orders: 21 Cyc. 401. No doubt, such authority in the board extends only to nuisances which endanger the health of individuals or communities, and to places where the sanitary laws are inoperative. But the power of the board to act must be made out upon satisfactory evidence that the act of the city creates a public nuisance; or if the danger is only apprehended, as in this case, facts must be established which show the danger to be real and imminent. It is said in High, Injunctions, Section 811:

"Where the injury resulting from the pollution of water by sewage from a city is not imminent and will result, if at all, only in the future, * * relief by injunction will be denied, * * where the fact of the nuisances is not made out by clear and satisfactory evidence."

See, also, *Hutchinson* v. *Delano,* 46 Kan. 345 (26 Pac. 740); *Newark Aqueduct Board* v. *Passaic,* 46 N. J. Eq. 552 (20 Atl. 54, 22 Atl. 55); Parker and Worthington, Health and Safety, §§ 183, 184, 221.

The actual existence of the nuisance must be established: *Eagan* v. *New York Health Department,* 20

71 Or.—25

Misc. Rep. 38 (45 N. Y. Supp. 325); note to *Grossman v. Oakland,* 36 L. R. A. 603.

6. There is no proof here as to the use of the water of the stream for domestic purposes or for stock, or that there is likely to be such use. Farnham, Water and Water Rights, at page 647, says:

"Injunction is a proper remedy to abate a nuisance, but it is not every case in which it will be granted in the first instance. If the discharge of sewage into the stream does not create a nuisance, an injunction will be refused. And, in view of the public necessities involved, the court will be slow in granting the injunction, if any other form of relief is available. The injunction will also be refused if the nuisance is merely anticipated." See cases cited in note to this text.

Again, at page 544, it is said that the authority does not justify arbitrary action; that, if the property does not constitute a nuisance, the board has no power to interfere with it.

The plaintiff has not established the fact that a public nuisance has been created, and is not entitled to an injunction. The case will be reversed, and the suit dismissed. REVERSED. SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MCNARY and MR. JUSTICE RAMSEY concur.

MR. JUSTICE BEAN not sitting.