(20 Misc. Rep. 38.)

### EGAN v. HEALTH DEPARTMENT OF CITY OF NEW YORK.

(Supreme Court, Special Term, New York County. March, 1897.)

1. HEALTH—VACATING TENEMENT HOUSE—NOTICE TO OWNER.
   The board of health of New York City may order a tenement house to be vacated, because of its unsanitary condition, without notice to the owner.
2. SAME—REASONABLENESS OF ORDER.
   An order that a tenement house be vacated because of its unsanitary condition is not unreasonable because it also prohibits the use of the house at any future time without the permission of the board, but such prohibition applies only to the existing conditions.
3. SAME—POWER TO ORDER REMOVAL OF BUILDING.
   An order of the board of health declaring a building dangerous, and ordering it to be removed, is not conclusive, but is merely an initiatory step, under Laws 1882, c. 410 (Consolidation Act) § 659, as amended by Laws 1895, c. 567, which provides that the board may condemn a building, and order it to be removed, "provided the owner or owners of said building can demand a survey of said building in the manner provided for in case of unsafe buildings, and may institute proceedings * * * for the condemnation of said building."

Action by Josephine E. Egan, by Luke A. Lockwood, her guardian ad litem, against the health department of the city of New York, to enjoin the enforcement of an order of said health department. Complaint dismissed.

Redfield & Redfield and Henry A. Forster, for plaintiff.
Henry Steinert and Roger Foster, for defendant.

BEEKMAN, J. The plaintiff is the owner of a tenement house situated on the rear portion of the premises No. 55 James street, in this city, and in this action seeks to enjoin the health department from executing an order which it has made requiring the tenants to vacate the premises, and prohibiting the further use of the

same as a human habitation without a written permit from the board of health, which is the head of the department. The order recites that the sanitary superintendent, one of the defendant's officers, has certified to the board that the building in question is "unfit, and not reasonably capable of being made fit, for human habitation, by reason of want of proper ventilation, and by reason of want of repair and defects in the drainage and plumbing, and because of the existence of a nuisance on the premises which is likely to cause sickness among its occupants, and that the occupancy of said building is dangerous to life and detrimental to health." This condition the board has determined to exist, and states it as the reason for issuing the order complained of. Much proof was taken upon the trial with respect to the sufficiency of these charges, and while perhaps it may not be necessary for me to go further than to find that there was some basis for an exercise of judgment upon the situation of the board, and that the conclusion arrived at was neither unreasonable nor unsupported by the facts, it is proper to add that I concur in the propriety of the action which was taken. The unsanitary condition of the building was obvious, the facts had been reported to the board by its officers who were charged with the duty of personal inspection, and at least two of the commissioners had themselves personally examined the property.

It was the function of the board, exclusively confided to it by the legislature, to determine whether an occasion existed for the exercise of the power set in motion by its order, and, having so determined, the court will not assume to reverse its action, unless it appears that such action has been arbitrary, oppressive, or repugnant to justice. The plaintiff contends, however, that she was entitled to notice of the proceedings, and to be heard upon the question before it was found against her, and that, as she had neither, she has been deprived of her property without due process of law, in violation of constitutional guaranty, and is therefore entitled to the protection of the court against an unwarrantable invasion of her right. This claim, however, is unsupported by authority. Health Dept. of City of New York v. Rector, etc., of Trinity Church, 145 N. Y. 32, 39 N. E. 833; People v. Board of Health of City of Yonkers, 140 N. Y. 1, 35 N. E. 320; Fire Dept. v. Gilmour, 149 N. Y. 453, 459, 44 N. E. 177.

It rests upon the mistaken assumption that the determination of the health authorities is final and conclusive. The jurisdiction of the board depends upon the existence of the nuisance, and that is always open to judicial inquiry, even though the property owner may have had a hearing before the board on the subject. Health Dept. v. Rector, page 48, 145 N. Y., and page 848, 39 N. E., where the whole subject is elaborately discussed. Even the act under which the defendant proceeded in this case does not assume to do more than to declare that the orders of the health board are to be treated as "prima facie just and legal." While the judgment of the board upon the question is entitled to great weight, and will not be disturbed if it is within the bounds of reason, its reasonable-

ness is still open to inquiry in any judicial proceeding, either civil or criminal, in which it may be called in question. But where sufficient grounds exist for action, the latter may be summary and without "due process of law," as that phrase is commonly understood. Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878.

In the case cited the court, after reviewing the cases upon the subject, says (page 237, 119 N. Y., and page 880, 23 N. E.):

"These authorities sufficiently establish the proposition that the constitutional guaranty does not take away the common-law right of abatement of nuisances by summary proceedings without judicial trial or process."

But it is claimed that the order is unreasonable, in that it not only requires the building to be vacated, but also prohibits its use as a human habitation at any future time without written permission of the board; so that even if the plaintiff should remedy the evils which the board has found to exist, and should restore the premises to a sanitary condition, she would still be prevented from enjoying her property. The answer to this seems to be that the order is to be construed as applying to then existing conditions. It will be time enough to consider what the rights of the plaintiff may be when she has removed all present grounds for complaint. She would then be in a position to apply for the permission which the order contemplates, and, if the nuisance has been abated, it must be assumed that the board would grant it. Indeed, it could not legally withhold it. The statute (section 659 of the consolidation act) under which the order in question was made provides that the board may revoke the order whenever it "shall become satisfied that the danger from said building or part thereof has ceased to exist, or that said building has been repaired so as to be habitable." It could not capriciously or unreasonably refuse to be satisfied where the facts plainly demand such a conclusion. Although the words which confer the power to revoke are permissive in form, they import, under well-settled rules, an obligation to exercise such power when the justice of the case demands it. In other words, the deprivation of which the plaintiff complains continues only so long as the conditions exist which justified the order in the first instance, and the plaintiff, therefore, is not aggrieved, on constitutional or other grounds, by the operation of repressive measures essential to the abatement of the nuisance, for such repression can continue only so long as the occasion for it exists.

It is in evidence that shortly after the passage of the order in question a further order or resolution was passed by the board of health condemning the premises, and requiring the owner forthwith to remove the building. A preamble recites the previous order, declares that the premises are dangerous to life or injurious to health, and that "the evils in or caused by said building or premises cannot be remedied by repairs or in any other way except by destruction." Authority for this is found in chapter 567 of the Laws of 1895, amending section 659 of the consolidation act. An examination of the statute, however, very clearly shows that this order is an initiatory step, which must be followed by proceedings in court for the condemnation of the property and the award of com-

pensation therefor. Where the board has determined that a destruction of the building is necessary, the act provides that "said board of health may condemn the same and order it removed, provided the owner or owners of said building can demand a survey of said building in the manner provided for in case of unsafe buildings, and may institute proceedings in the supreme court in the county of New York for the condemnation of said building." The owner is expressly allowed to answer the petition of the board in such proceedings and to dispute the necessity for the order. If upon the trial the order is sustained, commissioners must then be appointed by the court to estimate and determine the compensation which the owner shall be entitled to receive for the destruction of his property.

It will thus be seen that the plain purpose of the statute is that, where condemnation is determined upon by the board, compensation must be made to the nonassenting property owner. The order or resolution of the board condemning the property must, therefore, in such a case, be followed by the institution of proceedings to condemn, for it is the only method by which it can be made effective. The property owner also has a pecuniary interest in the matter, which is sufficient to make the exercise of the power obligatory and enforceable at his suit. The permissive form in which the power is stated in the act is such as is commonly used in conferring jurisdiction, and does not mean that the board may or may not act at its mere discretion. Power thus conferred becomes imperative when a case is presented where either the public interests or the protection of a private right call for its exercise. . This is a well-settled principle of statutory construction. The statute then develops a perfectly clear and constitutional scheme for the abatement of nuisances of this class. The first step is the order such as was made in the first instance in this case. It is injunctive in form, and in contemplation of law suspends the occupation of the property while the grounds for complaint exist. The owner may remedy the evil, and when he shall have done so he will be relieved from the order. Should this not be done or be impossible, the board may follow up the first order by a second one, which by statute is predicated upon the former, declaring the mischief irremediable and condemning the building. Where the owner does not assent to the removal, the board must avail itself of the remedy by which the condemnation is legally accomplished, and the amount of compensation to be made to the property owner is ascertained, and in that proceeding the existence of the jurisdictional facts, namely, "the necessity of such destruction," must be tried and determined on the demand of the owner.

We have thus, when the action of the board is to be conclusive upon the rights of the owner, ample provision for notice and a judicial hearing before such action becomes final; and, if the decision of the court is adverse to the board, the property owner is free from the operation of the second order, and, as we have seen, may disburden himself of the first by remedying whatever evils may justify its continuance. As the power conferred upon the board is neces-

sary for the protection of the public health, and must, therefore, be susceptible of immediate and untrammeled exercise, as the exigency of the case may require, the statute is quite as considerate of private right as it should be, and fully meets the demands of justice. It is clearly constitutional, and the court will refrain from interfering with its operation except in cases where an abuse of authority is manifest.

Judgment is ordered for the defendant dismissing the complaint, with costs. Complaint dismissed, with costs.