Hayward, Appellant, *v.* Samuel et al.

Argued April 17, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John M. Smith, Jr.,* for appellant.

*James Francis Ryan,* with him *Samuel Feldman,* Assistant City Solicitor, and *Frank F. Truscott,* City Solicitor, for appellees.

OPINION BY MR. JUSTICE LINN, May 27, 1946:

This was a taxpayer's class bill to restrain certain officers of Philadelphia from expending public funds [1] in exterminating pigeons in the section of the city bounded by Girard Avenue, Delaware River, South Street and the Schuylkill River. The bill alleged that the ordinance was "invalid, illegal and unconstitutional." The Society For The Prevention of Cruelty to Animals was made a party defendant because its lethal chambers were used to destroy the pigeons.

The challenged ordinance was passed on October 17, 1945, and amends section 1 of an ordinance of 1869 prohibiting the killing of birds in Philadelphia. The amendment provided that the prohibition "shall not apply to

---

[1] The alleged expenditure was stated to be in an amount sufficient to give this court jurisdiction.

any authorized agent or employee of the Department of Public Health who shall capture, trap, snare or kill any pigeon (other than carrier pigeons) pursuant to a resolution of the Board of Health declaring the presence of such pigeons to be prejudicial to the public health."

The Board of Health, on July 12, 1945, adopted the following resolutions: "That the Board of Health of the City of Philadelphia declare the influx of pigeons in numbers presently existing on and about the streets, highways and public places in the City of Philadelphia within the following described area, Girard Avenue on the north, South Street on the south, the Delaware River on the east and the Schuylkill River on the west, constitutes a public nuisance, and has a tendency to endanger the health of the inhabitants of the City; and . . . That the Board of Health proceed forthwith to abate said nuisance by the removal of said pigeons from the said streets, highways and public places of the City of Philadelphia, and the Director of the Department of Public Health be and he is hereby authorized to employ the services of the said Department in effecting the purposes of this resolution."

The case was heard on bill, answers and proofs. When the Board of Health of Philadelphia, on evidence, decides that a nuisance detrimental to public health exists, the courts will give effect to that finding; the question is not whether the court would have reached the same conclusion on the evidence but whether the conclusion of the Board of Health finds support in the evidence: Act of January 29, 1818, 7 Sm. L. 5; Act of April 5, 1849, P. L. 346; *Kennedy v. Board of Health*, 2 Pa. 366; *Adams v. Ford*, 3 Pa. Superior Ct. 239; *Paris v. Phila.*, 63 Pa. Superior Ct. 41, 49.

The Act of 1818, 7 Sm. L. 5, was entitled: "An Act for establishing a Health Office, and to secure the City and Port of Philadelphia from the introduction of pestilential and contagious diseases, and for other purposes." Section 27 contained the following provision:

". . . And it shall be the duty of the said board to cause all offensive or putrid substances, and *all nuisances which may have a tendency in their opinion to endanger the health of the citizens*,[2] to be removed from the streets, lanes, alleys, highways, wharves, docks or any other part or parts of the city of Philadelphia, the district of Southwark, and the townships of the Northern Liberties, Moyamensing, and Penn, . . ." The Act of 1849, P. L. 346, supplemented the Act of 1818 and provided: "That the board of health shall have full power and authority to remove the *cause* of all nuisances that exist now or may be hereafter created, in the same manner and by the same authority as the existing laws now authorize them to remove all nuisances."

We adopt the following statement from the adjudication filed below: "While a great deal of testimony was introduced in the case, directed to the question as to whether or not pigeons were in fact carriers of dis-eases which could be communicated to human beings, that scientific question is not for the determination of the court. It was made abundantly clear to the court, however, that there was a definite possibility of dan-gerous infection from pigeons, even from their excreta or droppings."

No objection is made to the manner of killing the pigeons. The manager of the Society For The Prevention of Cruelty to Animals testified: "At that time we were asked if the society would kill in a humane manner any pigeons that were turned over to it by the Department of Health. Having monoxide lethal gas chambers for killing other animals, we agreed that if they would send them to us we would put them to sleep for them in a humane manner, feeling that that was the proper thing to do rather than have them slaughtered up by inex-perienced persons. By Mr. Brown: Q. And in accord-ance with that arrangement, you have killed some pigeons in the humane manner described? A. Yes."

---

[2] Italics supplied.

Plaintiff contends these pigeons are *"ferae naturae and the property of the Commonwealth of Pennsylvania"*; that they are "game and within the protection of section 101(e) of the Game Law of June 3, 1937, P. L. 1225." We must reject the arguments made in support of both contentions. The Act of 1818 supra, was a general health law. In *Kennedy v. Board of Health,* 2 Pa. 366, this court said the Board of Health "had final jurisdiction in determining the fact of nuisances which they ordered to be removed." See also *Philadelphia v. Provident Life & Trust Co.,* 132 Pa. 224, 18 A. 1114. The authority conferred by the legislature is general; the legislature did not except from the jurisdiction of the Board of Health nuisances that might result in the City of Philadelphia from property under the control of the Commonwealth; jurisdiction was conferred over all nuisances "on the streets, lanes, alleys, highways, wharves, docks or any other part or parts of" Philadelphia, though the streets and highways are the property of the Commonwealth.

The second contention is also without support. It is true that section 101 containing definitions, provides that "The term game birds shall include . . . (e) the birds belonging to the order columbae, commonly known as doves. . . ." A witness called on behalf of plaintiff testified that the legislature made a mistake in calling "the order columbae" because the order columbae is a member of a larger order and because "there is absolutely no difference between the two." In the disposition of this appeal, it is not necessary to consider the distinctions suggested by the witness. We are all satisfied from a consideration of the Game Law, a very comprehensive statute, that the legislature did not intend to deal with birds such as these pigeons as game birds. At the same time, however, we are not deciding that if game birds, within the statutory definition, became a public nuisance detrimental to health in Philadelphia, the jurisdiction conferred on the Board of Health would not be sufficient to abate the nuisance.

Plaintiff's third and last contention is summarized in the brief in the following words: "It is the position of the appellant here that the validity of the ordinance depends upon its reasonableness as an exercise of the police power; . . ." That is a sound position. The wisdom of the legislation is for the City Council and not for the courts; City Council had before it the declaration of the Board of Health made in the course of duty. We can find nothing in the record that would justify the court in saying that the Board of Health and the City Council acted unreasonably. Public duty required the abatement of the nuisance after the Board of Health, upon whom the legislature had conferred jurisdiction in the matter, had decided that a nuisance existed.

Decree affirmed with costs.