## Philadelphia, to use, v. Katz et al.

*F. F. Truscott*, city solicitor, and *E. L. Rosen*, assistant city solicitor, for plaintiff.

*M. H. Egnal*, *L. S. Hecht*, and *M. C. Selig*, for use plaintiffs.

*I. Packel*, for defendants.

**70**

SLOANE, J., October 7, 1946.—Four property owners (in this and three accompanying cases), filed a motion and rule to strike off a municipal lien. All four are identical in reason and purpose; a disposition of one is a disposition of the four. Each lien is for a proportionate share of the expense (and penalty) of repaving and regrading private driveways backing on the four properties (and many other properties) and was filed by the contractor (as use plaintiff), who furnished the material and did the work, under the Act of July 11, 1923, P. L. 1032, as amended by the Acts of June 22, 1931, P. L. 841,[1] and May 17, 1939, P. L. 151;[2] 53 PS §3681 and supplement, et seq.

The procedure is undebated, the record being free of unagreed circumstance: Borough of Berwick v. Smethers et ux., 105 Pa. Superior Ct. 40 (1932). Removal of the liens is sought through an attempt to have the court strike the act from the statute books.

It is urged that the act is unconstitutional; that it infringes on the principles of our Federal (article 14) and State (article 1, sec. 9) Constitutions, in a word, that the act is not due process. Of course, without a compelling consideration to stifle it, the act ought to stand: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 52(3), 46 PS §522(3); Hadley's Case, 336 Pa. 100, 104 (1939); Brereton Estate, 355 Pa. 45.

It is quite to the point to give the act's provisions. In sum: (1) Improper grading or defective paving of a private driveway in Philadelphia (cities of the first class) is in effect made a nuisance; (2) the board of health declares it so, and certifies it as a nuisance to the department of public works; (3) the registered owner or user of the driveway must abate it upon 10

---

[1] This amendment adds driveways.

[2] This amendment adds retaining walls.

days' notice by the department of public works to the registered owner; (4) upon failure or neglect of the owner or user to do so, the department of public works does the necessary work of abatement in accordance with the surveyor's lines, by itself, or if without funds for the purpose, through a contractor; (5) the cost, or a proportionate part (proportionate to the width of the abutting properties, or in proportions deemed just and proper by the department of public works), is a lien, and is collectible by law, as in similar cases.

Petitioners claim unconstitutionality because of (1) the arbitrary power in the board of health to declare the nuisance, and in the department of public works to repave and regrade at the owner's expense; (2) the arbitrary power in the department of public works to apportion charges; and (3) because 10 days for the owner or user to do the work is unreasonably short. Petitioners limit their complaint to driveways that are private.[3]

I can suppose by this day the sureness of the existence of nuisance in the law. Tracings of it go back to Glanvill and Bracton, and the "Assize of Nuisance" mentioned in Pollock and Maitland, History of English Law, vol. 2, p. 53. The concept has been generalized into acceptance. "Whatever worketh *hurt, inconvenience,* or *damage,* is a nuisance. 3 Black. Com. 215; 2 Greenleaf's Evid. 465": Lancaster Turnpike Co. v. Rogers, 2 Pa. 114, 115 (1845); Nesbit et al. v. Riesenman et al., 298 Pa. 475, 482 (1930). And for our purpose I can see no point to argue on the meaning of nuisance.

---

[3] While the amendment of 1931 uses the word "driveways", without the word "private", it is agreed that, since it is an amendment to the Act of July 11, 1923, which had to do with private alleys, private driveways are meant.

"It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement [Commonwealth v. Cassidy, 1865, 6 Phila., Pa., 82] to a cockroach baked in a pie [Carroll v. New York Pie Baking Co., 1926, 215 App. Div. 240, 213 N. Y. S. 553]": Prosser on Torts, p. 549, Bamford v. Turnley, 122 Eng. Rep. 27, 31 (1862).

Suffice it that we find definition and limitation as circumstances arise, and thus get to what is, and what is not a nuisance, and how properly it is to be abated.

And I can suppose too the absence of doubt to put an end to conduct which hurts or damages or annoys, or (laterly) that affects the esthetic sense. Organized society impels to that kind of mutuality. A nuisance and its abatement comes well within the view of the general good and the comprehensive reach of the police power.

There were acts or omissions established as nuisances at the common law, but the legislature may formulate the common law (see note, 107 American State Reports 201), or change and enlarge upon it to ensure the "articulate voice" and not the "brooding omnipresence", and in public interest and within the limitations of public welfare, establish and declare what is a nuisance: Pittsburg v. W. H. Keech Co., 21 Pa. Superior Ct. 548 (1902); Commonwealth v. Parks et al., 155 Mass. 531 (1892).

"While the legislature has no right arbitrarily to declare that to be a nuisance which is clearly not so, a good deal must be left to its discretion in that regard, and if the object to be accomplished is conducive to the public interests, it may exercise a large liberty of choice in the means employed": Lawton et al. v. Steele, 152 U. S. 133, 140 (1894), 119 N. Y. 226 (1890).

See Fertilizing Co. v. Hyde Park, 97 U. S. 659 (1878), Northwestern Laundry v. City of Des Moines, 239 U. S. 486, 491-492 (1916), Philadelphia v. Bra-

bender, 201 Pa. 574 (1902), Bryan v. City of Chester, 212 Pa. 259, 262 (1905), and Smith et al. v. New England Aircraft Co., Inc., et al., 270 Mass. 511, 523 (1930).

The change is an extension, "a growth and adaption" of the common law to the present, its "peculiar boast and excellence" (Hurtado v. California, 110 U. S. 516, 530 (1884)), and is another instance of "the felt necessities of the time", an adequacy to change. Whether as devotee of the common law you refuse to give it an otiose status but on the contrary foresee in it generations of changing social-mindedness is not too much to our matter. The fact is, a defect in a highway is but another form of the nuisance of a log across it. Each is a stern reality and so to be considered and handled.

Coming closer to the point, and with these general considerations before me, it is clear enough that the legislature has a right to say that a defective private driveway—because of defective grading or paving— is a nuisance, and that something be done about it. I see no logical difficulty to such conclusion. It is in accord with the declared policy of our legislature for more than 100 years. See Acts of January 29, 1818, 7 Sm. L. 5, April 7, 1830, P. L. 348, April 4, 1866, P. L. 487, and June 25, 1913, P. L. 544. Private driveways, of the kind here before me, may be private in ownership, but public or semi-public in use. The driveways, though called private, open on public highways [4] (see section 4 of the act), and are open to the traffic of the tradesman and the passerby as well as to the owner or occupier. That far at least the driveways are public

---

[4] Counsel have stipulated that the driveway is 21 feet wide, and communicates directly at one end, and by a connecting driveway at the other, with public highways; and that the owners, tenants and occupiers of the lots bounding thereon are entitled to its use in common.

and of the public interest, and subject to public regulation. They are, in their very nature, a type of private property in which there is a great deal of public interest. They are commonly used by children, peddlers, delivery men, garbage and trash collectors, public utility meter readers and repair men, and others. It is proper for the State to require that some degree of safety be afforded these people. Failure properly to maintain a private driveway can be of danger to this segment of the public, and it is a valid exercise of the police power for the State to declare a bad condition of such driveway a nuisance and provide for abatement. Failure to maintain a proper grade in such driveway is a danger ultimately to the highways the driveway joins. The courts ought not to limit the legislature too closely in this connection. The Act of 1931 has no written legislative history (Statutory Construction Act of 1937, P. L. 1019, art. IV, sec. 51(7), 46 PS §551(7)), and I so interpret the word driveway in the act to help to its constitutionality. That the act deserves. See Hotel Casey Co. v. Ross et al., 343 Pa. 573, 578 (1942) and Commonwealth v. Reitz, 156 Pa. Superior Ct. 122, 125 (1944).

By way of analogy, the right to enjoyment and use of private property is not without restrictions. Possessors of property owe duties even to adult trespassers (A. L. I. Restatement, Torts §335), as well as to trespassing children: Altenbach et ux. v. Lehigh Valley R. R. Co., 349 Pa. 272, 275 (1944) ; A. L. I. Restatement, Torts §339. These duties become greater in the case of nontrespassing visitors, whether gratuitous licensees, business guests, or persons with a privilege to enter independently of possessor's consent. See Fry v. Brubaker, 77 Pa. Superior Ct. 438 (1921) and A. L. I. Restatement, Torts §§341, 345. With respect to all such persons, dangerous conditions upon the property may result in the owner being liable for damages in the event of injury. Where the property is of a nature

that it is used by a substantial portion of the public, either as tenants, employes, business guests, etc., the legislature may properly declare that a dangerous condition thereon constitutes a nuisance and provide necessary means for its abatement.

Thus, it has been held a valid and reasonable exercise of the police power to require that, in the construction of buildings, floors should be laid for the protection of those employed thereon; sanitary plumbing, sufficient fire escapes, appropriate fire alarms and fire extinguishers, sufficient banisters, railings, stairways, etc., may be required in tenements. Ordinances regulating steam boilers, elevators, hoistways, hatchways, etc., in buildings are clearly within the police power. See 3 McQuillin, Municipal Corporations (2nd ed.) §1017.

The complaint is that an arbitrary power is lodged in the board of health to determine the existence of a nuisance. What petitioners overlook is the immediacy necessary to an efficient remedy for a nuisance. Necessity compels speed if not summariness. Miller v. Foster, 244 Wis. 99 (1943), 153 A. L. R. 845. When the nuisance is flagrant and dangerous enough, public authorities, within limitation and upon necessity, may abate summarily without resort to legal proceeding: Yakus v. United States, 321 U. S. 414, 443 (1944),[5] 39 Am. Jur. 456.

Defendants' objections seem to me to be looking into theory. Their minds seem to be locked on "a drily

---

[5] "The security of lives and property may sometimes require so speedy a remedy as not to allow time to call on the person on whose property the mischief has arisen, to remedy it. In such cases an individual would be justified in abating a nuisance from omission without notice. In all other cases of such nuisances, persons should not take the law into their own hands, but follow the advice of Lord Hale, and appeal to a Court of Justice": Earl of Lonsdale v. Nelson, 107 Eng. Rep. 396, 400 (1823). See Philadelphia v. Scott, 81 Pa. 80, 85 (1876).

logical extreme": Noble State Bank v. Haskell, 219 U. S. 104, 110 (1911). When they say the board of health has arbitrary power to adjudge the instance of the nuisance, they must infer the power to be fixed and final, without gainsay, and therefore despotic. They must conclude upon an absolutism. And they must infer, as they in fact allege, deprivation of a process by which defendants can contest the will of the board. But that is not so. From the very nature of a nuisance, as I suggest, there ought to be a first discretion in the body that is placed, governmentally, to look out for the well-being of the public. And that likewise is so of the department of public works. Defendants have full chance to cast these bureaus into court and to call in question their exercise of power.

The board of health acts in the first instance; it is the first expert, "the expert on the spot". See Hayward v. Samuel et al., 354 Pa. 266 (1946), and Stone et al. v. Heath et al., 179 Mass. 385 (1901). If it be wrong in its judgment, petitioners have their remedy. See Samuels v. McCurdy, 267 U. S. 188, 200 (1925), Lutz v. Dept. of Health et al., 304 Pa. 572, 577 (1931), Simco Sales Service of Pa., Inc., v. Brackin et al., 344 Pa. 628 (1942), Paris v. Philadelphia, 63 Pa. Superior Ct. 41, 48 (1916), Health Dept. of the City of New York v. Rector, etc., 145 N. Y. 32 (1895), and Egan v. Health Dept. of City of New York, 20 Misc. 38, 45 N. Y. Supp. 325 (1897). Petitioners need not wait the event.

And if not before, there is no sufficient reason why due process may not come after the event. "If he cannot be heard beforehand, he may be heard afterward": Miller v. Horton et al., 152 Mass. 540, 543 (1891); Stone et al. v. Heath et al., 179 Mass. 385 (1901).

"Sometimes when summary action is necessary the property owner's rights are preserved by leaving all questions open in a subsequent suit": Missouri Pacific

Ry. Co. v. Nebraska, 217 U. S. 196, 208 (1910) ; Yakus v. United States, 321 U. S. 414, 442 (1944).

"Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate": Phillips et al. v. Commissioner, 283 U. S. 589, 596-7 (1931).

There is nothing in the record to show arbitrariness or unreasonableness in the actions of the board of health or the department of public works. See Hayward v. Samuel et al., 354 Pa. 266, 271 (1946). But if either was without reason or wrong in its acts, if petitioners are dealt with out of hand, they have the right to defend against the municipal lien. If petitioners are right and it appears the driveway was no nuisance, was in good repair, they will defend, and defend successfully, against the attempt to collect the cost of repairing and regrading. Petitioners can thus effectually dispose of the allegation of nuisance. If petitioners are wrong, and there was this nuisance, they should pay to another for doing, in accord to law, that which they should have done themselves. At all events, each petitioner has had his day in court, and that is due process—the embracement of "the fundamental conception of a fair trial, with opportunity to be heard": Frank v. Mangum, 237 U. S. 309, 347 (1915), dissent of Justices Holmes and Hughes.

Counsel presses forward with two cases, but both are different. Though the facts in Durgin et al. v. Minot et al., 203 Mass. 26 (1909) come close to ours, the statute is different. Whereas the Pennsylvania act requires the property owner to abate the nuisance, the Massachusetts act prescribes the method of abatement. The court there said:

"It is not an unreasonable inference that cases might arise where the landowner would prefer to discontinue, or to abandon the way altogether, rather than to bear

the required outlay; but no alternative is given after the board has issued its order . . . Under the most liberal interpretation, the act confers the arbitrary power to adjudge a private passageway injurious to the public health, and then to compel the owner or owners, *instead of abating the nuisance in any proper manner as the necessity may demand, to pave, repave, or lay out the roadbed* permanently as the board of health direct": Durgin et al. v. Minot et al., supra, p. 30. (Italics supplied.)

See Commonwealth v. Badger, 243 Mass. 137 (1922) and Report of the Attorney General of the State of Massachusetts (1935), p. 95.

In Philadelphia v. Provident, etc., Trust Co., 132 Pa. 224 (1890), the other of petitioners' cases, the question again turned, not on whether the city had authority to declare the condition a nuisance and to order its abatement, but on whether it was unreasonable to prescribe the method. That case arose when the city employed a contractor to clean defendant's privy wells, fill them in, and construct water closets in their stead. The owner paid for the cleaning but refused to pay for the additional cost of the water closets ordered by the board of health. The court found that defendant was justified in its refusal.

The question of the sufficiency of the time is a practical one. I do not say the prescribed time of 10 days for abatement is quite reasonable for all sets of circumstances, though there are cases like Commonwealth v. Collins, 257 Mass. 580, 586 (1926), where 24 hours was, at least inferentially, not deemed unreasonable. "In construing a statute, it should receive the most reasonable and beneficial interpretation": Commonwealth v. Peoples et al., 345 Pa. 576, 580 (1942). It would be unwise to pitch unconstitutionality of the act on this provision. "Consequences cannot alter statutes, but may help to fix their meaning. Statutes must

be so construed, if possible, that absurdity and mischief may be avoided": In the Matter of Rouss, 221 N. Y. 81, 91 (1917) ; Statutory Construction Act of 1937, P. L. 1019, art. IV, sec. 52(1), 46 PS §552(1), Spigelmire v. North Braddock School District, 352 Pa. 504, 512 (1945).

If petitioners needed and requested additional time, and the request were disallowed without reason and discretion by the Department of Public Works, they could seek the help of the court. The court will relax an arbitrary compulsion. Where 10 days would be insufficient to do the work required, action evincing good faith to that end would doubtless be sufficient. In this case, petitioners had two months before the department acted. At no time did they indicate a willingness to undertake the repairs.

And finally, there is argument that the act is objectionable because it gives a limitless discretion to the department of public works to assess the costs. But there is no showing of impropriety or discrimination, and the act itself shows no such tendency. See Hayward v. Samuel et al., 354 Pa. 266, 271 (1946), and Harrisburg v. McPherran, 14 Pa. Superior Ct. 473, 489 (1900). Permission for the department to apply "any other proportions as may, under the facts and circumstances of the case, be deemed just and proper" was included in the act, as I see the provision, in order to provide for proper allocation in those cases where the front-foot rule would not be fair. Cf. Louisville & Nashville Railroad Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 434 (1905) ; Martin v. District of Columbia, 205 U. S. 135 (1907). In the absence of fact that the department of public works abused its discretion, or was arbitrary without being honest and sensible, or was in any way unreasonable, no fault is found with this provision. It would seem to me the department deserves the more benign and generous as-

sumption of good experience and sound judgment in those cases which do not submit to simple arithmetic. For the sake of government, I think we ought to consider, in the first instance, that government officials do the right thing.

The motion to strike off the municipal lien is denied.