## Commonwealth v. Crucible, Inc.

*Marvin A. Fein,* for Commonwealth.

*Harley N. Trice, 2d,* and *Blair S. McMillin,* for defendant.

BROUGHTON, Chairman of the Board, December 5, 1973.—In this case, the Department of Environmental Resources ("department") issued an order to

Crucible, Inc. ("Crucible") to make certain changes in the latter's coke oven operation at Midland, Pa. The order was, in form, effective immediately.

Crucible took an appeal to the board, and a week later petitioned for a supersedeas. The petition for supersedeas was based on the fact that, if the department's order were ultimately held valid, Crucible would be subjected to potential civil penalties and criminal fines for the period between the issuance of the order and the time when it was so held valid. The department has stated on the record that it might well bring such an action or actions, but would not actually do so until after this board has adjudicated the validity of the basic order in the above-captioned appeal. Indeed, if the department brought an action for civil penalties before that time, this board would simply postpone action on the civil penalty case until after the validity of the basic order has been determined. We would suspect most courts, dealing with a criminal complaint, would do likewise.

A hearing was held on November 16, 1973, on the petition for supersedeas. At the close of petitioner's evidentiary case, the department moved to deny the petition for supersedeas. Since it was the end of the day in any event, and the hearing would have to be continued, I reserved ruling on the motion. The motion is ruled upon herein.

By the motion to dismiss, as well as other motions and briefs at the hearing, several legal issues need to be decided: (1) Can the order be valid, prior to an adjudicatory hearing, under the Administrative Agency Law of June 4, 1945, P. L. 1388, as amended, 71 PS §§1710.1, et seq., and section 1921A(c) of The Administrative Code of April 9, 1929, P. L. 177, as amended, 71 PS §510-21(c)?; (2) if so, is that a violation of due process?; (3) what are the criteria for the

granting of a supersedeas, and has Crucible satisfied those criteria? I will take the first and third of these up independently, and deal with the due process issue as it relates to each.

(1) As I have pointed out recently in my concurring opinion in Commonwealth of Pennsylvania v. Carlisle Borough, EHB Docket No. 73-155-W (filed November 29, 1973), I think that section 1921A(c) of The Administrative Code of April 9, 1929, P. L. 177, as amended, 71 PS §510-21(c), does guarantee that an action of the department, although intended to be final, and final in form, is not legally final until a party adversely affected thereby has had an opportunity to appeal to the Environmental Hearing Board, *if* the action is not taken in compliance with the Administrative Agency Law of June 4, 1945, P. L. 1388, as amended, 71 PS §1710.1, et seq.

A question may be raised whether the action of the department in issuing the order in litigation was one to which adjudicatory or other procedures of the Administrative Agency Law applied, which procedures were not followed.

First, I think the order is an adjudicatory action of the department. The department found certain facts, and found that a particular remedy would be most effective given those facts. The remedy was analogous in administrative procedure to a mandatory injunction under judicial procedure. It is hard to escape the conclusion that the decision is an adjudicatory decision under section 2 of the Administrative Agency Law, supra, 71 PS§1710.2(a). See also National Automobile Corporation v. Barfod, 289 Pa. 307, 310-11 (1927).

Secondly, I do not think that the procedures relative to the issuance of the order were in violation of the Administrative Agency Law, supra. The order in

question specified a schedule for Crucible to come into compliance with the regulations of the department, 25 Pa. Code §§123.41 and 123.23. This section is identical with the "final standard" set forth in paragraph 3 of the order appealed from.

Crucible, by its own testimony,[1] did not request a variance under 25 Pa. Code Ch. 141. That would be the normal procedure, the procedure specified in the regulations, 25. Pa. Code Ch. 141, for setting a compliance schedule whereby the provisions of 25 Pa. Code §§123.41 and 123.23 became finally applicable, only in terms of the schedule proposed in the variance request to the extent approved by the department, under a procedure that included an opportunity for an adjudicatory hearing.

The department, in April of 1972, proposed a specific schedule to Crucible, and this was, according to its testimony, taken by Crucible to substitute for the normal variance procedure. This assumption on Crucible's part, however, does not negate the jural fact that the standards set forth in 25 Pa. Code §§123.41 and 123.23 became applicable to Crucible as of February 15, 1973, its effective date, when Crucible failed to apply for a variance under the regulations within the time specified therein for doing so.

When Crucible did not agree to the schedule proposed by the department in April of 1972, further discussions were held between the department and officials of Crucible. Other proposals were made by each party to these negotiations. At no time could Crucible have reasonably doubted that an order of the type that was ultimately issued would be issued. The

---

[1] Even if testimony had not been taken, I think the filing of a variance petition, or the lack of such filing, is the sort of record fact of which this board could have taken judicial notice.

exact details of that order and the exact date may not have been known, but Crucible must have known that something like the order that was issued would be.

The order appealed from does not increase Crucible's obligations under the Air Pollution Control Act of January 8, 1960, P. L. (1959) 2119, as amended, 35 PS §§4001, et seq.; and the Regulations, in particular 25 Pa. Code §§123.41 and 123.23. It decreases those obligations for a time, and sets a schedule for compliance. One result of the order is that Crucible is under a lesser legal obligation than it was currently under prior to the issuance of the order.

I base my conclusion that the Administrative Agency Law, supra, was complied with on several factors:

1. Crucible was in frequent contact with the department prior to issuance of the order;

2. Crucible had ample opportunity to, and did represent its position relative to the contents of the order prior to its issuance;

3. Crucible had ample prior notice or inquiry notice that an order of this type would be issued;

4. The order did not place new or increased legal duties upon Crucible; rather, the order redefined and mitigated what had been an immediate, current legal duty under the Regulations, and specified a schedule for coming into compliance with the Regulations.

I base my conclusion that there was no violation of procedural due process upon much the same arguments and, in addition, upon the observation, as noted in Commonwealth v. Derry Township, 10 Comm. Ct. 619 (1973), that:

"[T]here is authority for a governmental agency acting in the area of public health to order necessary action without prior hearing. See Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594 (1949)."

See also my concurring opinion in Commonwealth v. Carlisle Borough, E.H.B. Docket no. 73-155-W (filed November 29, 1973), and the cases cited therein: Lawton v. Steele, 152 U.S. 133 (1894); Title Guaranty & Surety Co. v. Allen, 240 U. S. 136 (1916); North American Cold Storage Co. v. Chicago, 211 U. S. 306 (1908); Ajamian v. North Bergen Township, 103 N. J. Super. 61, 246 A. 2d 521 (1968); Egan v. Health Department of City of New York, N. Y. Supp. 325, 20 Misc. Rep. 38, 45 (1897). The cases cited by Crucible do not convince me to the contrary; indeed, I am not sure I think that Standard Lime & Refractories, Inc. v. Department of Environmental Resources, 2 Com. Ct. 434 (1971), even supports Crucible's position.

(2) Relative to the criteria for the grant of a supersedeas, the board's Rules of Procedure, 25 Pa. Code §21.16(b), provide, in relevant part, as follows:

". . . Except for compelling reasons justifying a supersedeas, a supersedeas shall be denied in cases of serious pollution, health hazard or nuisance which either exists or is threatened. Supersedeas shall be granted where it appears that the petitioner will ultimately succeed on the merits or where it appears that any delay in enforcing a department order is unlikely to cause injury to the public."

We think this language was intended to codify the common law. Additionally, we think the operative standards for the grant or denial of a supersedeas constitute a set of substantive legal requirements. We seriously doubt whether the Environmental Quality Board, acting under a statutory authorization to adopt rules of *procedure* for the Environmental Hearing Board,[2] can change a *substantive* rule of law by promulgating a rule of procedure.

---

[2] Section 1921A(e) of The Administrative Code of 1929, supra, 71 PS §510-21(e).

Therefore, although section 21.16(b) of our Rules of Procedure may give an idea of our emphasis in interpreting the common-law standards, if there is a conflict, we must look to the common law, rather than to our rule, for controlling guidelines.

The case law speaks of four factors to consider in deciding whether to stay the operation of an administrative order, pending the outcome of the appellate process. As expressed in Virginia Petroleum Jobbers Association v. Federal Power Commission, 259 F. 2d 921, 925 (C.A.D.C., 1958),[3] these factors are:

"(1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? Without such a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review. (2) Has the petitioner shown that without such relief, it will be irreparably injured? The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. But injury held insufficient to justify a stay in one case may well be sufficient to justify it in another, where the applicant has demonstrated a higher probability of success on the merits. (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? On this side of the coin, we must determine whether, despite showings of probable success

---

[3] I was unable to find Pennsylvania cases, and none have been cited to me, clearly stating these criteria. They appear, however, to be general common law, and I could find no indication that the law was otherwise in Pennsylvania.

and irreparable injury on the part of petitioner, the issuance of a stay would have a serious adverse effect on other interested persons. Relief saving one claimant from irreparable injury, at the expense of similar harm caused another, might not qualify as the equitable judgment that a stay represents. (4) Where lies the public interest? In litigation involving the administration of regulatory statutes designed to promote the public interest, this factor necessarily becomes crucial. The interests of private litigants must give way to the realization of public purposes. The public interest may, of course, have many faces—favoring at once both the rapid expansion of utilities and the prevention of wasteful and repetitive proceedings at the taxpayers' or consumers' expense; both fostering competition and preserving the economic viability of existing public services; both expediting administrative or judicial action and preserving orderly procedure. We must determine, these many facets considered, how the court's action serves the public best."

These are obviously subject to a balancing process. For example, if we found a substantial irreparable injury to petitioner from having the order appealed from applicable during the period of the appeal, but no probability of petitioner's winning on the merits, then it would be difficult to find that any *legal* harm existed. Or if we found no harm to the public from non-compliance with the order during the period of the appeal, we might not scrutinize the probability of ultimately winning on the merits, or the extent of the injury to petitioner, at all closely. Alternatively, if the injury to the public were substantial, then we would not grant a supersedeas at all, as indicated by section 21.16(b) of our Rules of Procedure, no matter what the showing of harm to petitioner, short of a hearing on the merits to determine not merely whether peti-

tioner has a *likelihood* of winning on the merits, but whether petitioner *will* win.

"Harm to other parties to the litigation," in the case of litigation before this board, pretty much translates to "harm to the public," and does not frequently arise as a separate consideration.

Here, petitioner, Crucible, based its evidentiary case for a supersedeas at the hearing on the proposition that it was likely to win on the merits. A major mainstay of that case was the asserted impossibility of complying with the interim standards of paragraph 2 of the order, and with the December 1, 1973, deadline of paragraph 3 of the order.

Crucible asserted that its "irreparable injury" lay in the fact that it would be subject to potential civil penalties and criminal prosecutions for violation of the order during the period between the date of issuance of the order and the date when the order is adjudged valid by this board, if it is adjudged valid. As noted above, the department has stated, on the record, that it will not bring any such actions until after the board has finally adjudicated on the validity of the order, and then, of course, only if it is adjudged valid, but also stated that it did plan to bring some enforcement actions at that time.

There are several bases for holding that the standards for the grant of a supersedeas have not been met in this case. Overriding any others, however, we hold that Crucible will suffer no irreparable injury, as a matter of law, from having the order appealed from applicable during the period of the appeal.

The harm alleged is a very potential harm, at best. Furthermore, the extent of the harm is subject to litigation at the time enforcement actions are brought. At that time, if Crucible can prove that it was impossible to meet the terms of the order, that will be relevant

evidence going to the amount, at least, of either civil penalties or criminal fines. Crucible has not lost its right to litigate that issue or any other issue that has been raised in connection with its appeal by being denied a supersedeas in an enforcement action. See Standard Lime & Refractories Co. v. Department of Environmental Resources, 2 Comm. Ct. 434, 438-440 (1971).

But Crucible alleges that it is being irreparably harmed by being put in *jeopardy* by having to litigate this issue in a subsequent civil penalty and/or criminal action. We can see that such a situation might tend to give ulcers to corporate officials, but we fail to see that such possible ulcers are, in law, an irreparable harm such as would justify the granting of a supersedeas. The harm alleged, in being subject to future civil or criminal actions, is a harm that hereby *may* happen at some indefinite time in the future. Its extent is subject to the vicissitudes of future litigation. It is not a present or immediate harm; it is merely a fear of future harm. As such, it is not such a harm as would justify the imposition of a supersedeas: Eastern Greyhound Lines v. Fusco, 310 F. 2d 632, 634 (C.A.6, 1962); Virginia Petroleum Jobbers Association v. Federal Power Commission, supra.

I do not think there is a violation of due process in allowing further questions to await further hearings on the basic validity of the order, provided the form of hearing allows an opportunity to fully present a defense on the part of petitioner and an attack on the reasonableness and legality of the action of the department. The fact that Crucible is left "up in the air" pending those further hearings does not change my view. No rights of Crucible have been irrevocably lost, or will be, until those further hearings have been held. In that sense, Crucible is in no different position from

any other litigant awaiting trial. The fact that potential liabilities may be piling up in the interim[4] does not mean that there is a violation of due process.

Furthermore, Crucible overlooks the fact that it is now in violation of the regulations of the department relative to by-product coke ovens, 23 Pa. Code §§123.41 and 123.23, and is, therefore, subject to civil penalties and criminal action, now. It has already been subject to the harm of which it complains for over a year and a half, prior to issuance of the order in question, apparently without complaint. Indeed, the order appealed from postpones final compliance from the date specified in the regulations, July 27, 1975, to July 1, 1977. It substitutes interim standards, which are generally less stringent, during the interim period while Crucible comes into final compliance. Crucible complains that it is unreasonable to compel it to comply with the interim standards as of September 12, 1973. But, by its own testimony, Crucible did not apply for a variance from the final standards,[5] and it has, therefore, been subject to those standards since they became effective, February 15, 1972. We, of course, have no power to grant a supersedeas from the direct enforcement of the regulations in this situation.

Even if the order had created a new legal obligation, for the breach of which Crucible would be subject to civil penalties and criminal fines for the first time, it is difficult to see that Crucible could successfully claim that there was an irreparable legal harm to it from

---

[4] The same thing, for example, happens in private nuisance cases with continuing damages.

[5] As noted above, note 1, the fact of filing such an application, or the lack of it, would have been the sort of public record of which we could and would have taken judicial notice in the absence of testimony.

issuance of the order. Where the order simply set a schedule, and reduced the burden of compliance while that schedule applied, it is impossible to see that Crucible is in any way worse off than before, or how Crucible was irreparably harmed in any sense by the order.

I might add, as a general matter, that part of the basis for the appeal is the unreasonableness of the schedule set by the department. But the schedule so set has the legal effect of mitigating and making less onerous what was, before the order, an immediate and current legal obligation under the regulations, 25 Pa. Code §§123.41 and 123.23. It is difficult to see how *any* schedule that has that effect can be said to be unreasonable, at least for purposes of issuing a supersedeas with respect to it.

### ORDER

Now, therefore, December 5, 1973, the petition for supersedeas filed by Crucible, Inc., in the above-captioned case is hereby denied.

It is further certified, under section 501(b) of the Appellate Court Jurisdiction Act of July 31, 1970, P. L. 673, 17 PS §211.501, that this interlocutory order involves questions of law, controlling in this and other cases before the Environmental Hearing Board, as to which there is substantial ground for difference of opinion, and that an immediate appeal from this order may materially advance the ultimate resolution of these questions, provided the allowance of such an interlocutory appeal does not oust or interrupt the jurisdiction of this board to conduct further proceedings to determine the ultimate merits of the above-captioned appeal.